# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

United States of America
v.
Orenthial Dejon BAILEY

Defendant(s)

Case No. 3:26-MJ-1307

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 27, 2026 in the county of Knox in the Eastern District of Tennessee, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A) | Possession with intent to distribute 5 kilograms or more of cocaine |

This criminal complaint is based on these facts:

See attached affidavit, incorporated herein.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Sgt. Ryan Fletcher, Tennessee Highway Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/28/2026

[signature]
*Judge's signature*

City and state: Knoxville, Tennessee

Jill E. McCook, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| IN THE MATTER OF A CRIMINAL COMPLAINT AND ARREST WARRANT FOR: | ) ) | Case No. 3:26-MJ-1307 |
| Orenthial Dejon BAILEY | ) ) | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

1. I, Ryan Fletcher, Sergeant of the Tennessee Highway Patrol (THP), Tennessee Department of Safety & Homeland Security, your Affiant, being first duly sworn, depose and say:

2. I am a law enforcement officer of the State of Tennessee, empowered, to conduct investigations of and to make arrests for offenses identified as Tennessee Code Annotated, (TCA 39-17-417). I have been employed by the Tennessee Highway Patrol ("THP") and have been so employed since August 28, 2016. From May 2012 up to my employment by the THP, I was employed by the Campbell County Sheriff's Office as a deputy and an agent with the Eighth Judicial Drug Task Force.

3. I am assigned to the Special Investigations Bureau Interdiction Plus Unit, as well as the Commander of the Appalachia High Intensity Drug Trafficking Areas (AHIDTA) Task Force. Both units are charged with the investigation of criminal conduct in violation of Tennessee state and federal laws concerning controlled substances and other related criminal activities. In the performance of my duties as a uniformed law enforcement officer, I have conducted and participated in numerous investigations involving narcotics and other general investigations of state and federal laws. I have been involved in the detection and investigation of state and federal

narcotics violations, including the sale, distribution, importation, possession, and conspiracy to possess or sell and distribute various narcotics and controlled substances.

4. I am a certified Level I-North American Standard Inspector which includes the examination of driver's license; Medical Examiner's Certificate and Skill Performance Evaluation (SPE) Certificate (if applicable); alcohol and drugs; driver's record of duty status, as required; hours of service; seat belt; vehicle inspection report(s) (if applicable); brake systems; cargo securement; coupling devices; driveline/driveshaft; exhaust systems; frames; fuel systems; lighting devices (headlamps, tail lamps, stop lamps, turn signals and lamps/flags on projecting loads); steering mechanisms; suspensions; tires; van and open-top trailer bodies; wheels, rims and hubs; windshield wipers; buses, motorcoaches, passenger vans or other passenger-carrying vehicles – emergency exits, electrical cables and systems in engine and battery compartments, and seating.

5. I am an instructor for the Tennessee Highway Patrol's Proactive Criminal Patrol Course and a National instructor for the International Narcotics Interdiction Association (INIA) and for the Motor Vehicle Criminal Interdiction Association (MVCI).

6. Additionally, I have been involved in the investigation of numerous other criminal activities including firearms violations and violent offenses. The investigations in which I have participated have resulted in the arrest, prosecution, and conviction of individuals who have smuggled, received, and distributed controlled substances, including cocaine, heroin, marijuana, methamphetamine, and other scheduled prescription drugs, as well as the seizure of those illegal drugs and proceeds of the sale of those illegal drugs.

## RELEVANT STATUTES

This investigation concerns alleged violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) – Possession with intent to distribute five kilograms of a mixture or substance containing a detectable amount of cocaine, a controlled substance;

## PROBABLE CAUSE

7. On Wednesday, May 27, 2026, at approximately 1101 hours, your affiant, Tennessee Highway Patrol Sergeant Ryan Fletcher was working at the Tennessee Highway Patrol Scale Complex located at the 372-mile marker on I-40 in Knox County, Tennessee. Sgt. Fletcher selected the scale signage to notify Commercial Vehicles to enter the scales for inspection. While doing so, Sgt. Fletcher observed a Commercial Vehicle (CMV) by-pass the eastbound scale house. Sgt. Fletcher observed the CMV continue eastbound, avoiding the posted signage. Sgt. Fletcher entered onto I-40 and located the CMV continuing to travel eastbound on I-40.

8. Sgt. Fletcher performed a traffic stop at the 376A-mile marker, eastbound in Knoxville, Tennessee. Sgt. Fletcher checked the trailer registration and began to inspect the trailer for potential safety violations while walking toward the cab of the tractor. Sgt. Fletcher contacted the driver on the passenger side of the tractor and held up his hand to signal his location. The driver, later identified by his Texas driver's license as Orenthial Dejon BAILEY (DOB: 02/20/1976) opened the door for Sgt. Fletcher.

9. Sgt. Fletcher greeted BAILEY and asked if anyone else was in the tractor as the privacy curtain for the sleeper berth was closed. BAILEY shook his head left to right and replied, "No." BAILEY then retrieved his tablet to change his status from "Driving" to "On Duty" in preparation for an inspection. Sgt. Fletcher noticed a very strong odor of urine present while standing at the door. BAILEY then began speaking on the phone with a female and notified her

that he had been traffic stopped.

10. Sgt. Fletcher spoke with BAILEY about the reason for the traffic stop. Sgt. Fletcher asked BAILEY if he had noticed the sign prompting him to exit into the Scale Complex. BAILEY replied, "I saw all the trucks, so I thought I was..." Sgt. Fletcher then explained to BAILEY that the sign was prompting all Commercial Vehicles to enter the scales. BAILEY responded, "okay" while shaking his head up and down. Sgt. Fletcher then requested BAILEY's driver's license and continued to explain the sign's meaning. BAILEY began looking for his driver's license by first reaching toward the pocket in the driver's door. BAILEY then began to look around the floor, moving papers and items back and forth. BAILEY then stood up and moved toward the sleep berth.

11. Sgt. Fletcher observed that BAILEY continued to move around while keeping the curtain partially closed. Sgt. Fletcher asked BAILEY to explain what he was doing and BAILEY responded, "I'm looking for my wallet." BAILEY continued looking around the truck's cab, at one point reaching into the driver 's side door pocket. BAILEY again moved toward the sleeper berth, at which time Sgt. Fletcher notified BAILEY he would be pulling the curtain back to observe what BAILEY was doing.

12. Sgt. Fletcher observed BAILEY remove bedding from the lower bunk and placed it on top bunk, on top of the bags that were sitting were on the top bunk. BAILEY continued to grab a large number of items without going through them to locate his wallet, then moved them to the top of the bunk, covering the contents of the top bunk. Sgt. Fletcher notified BAILEY that he could get his information and enter it into the computer system for verification. BAILEY then retrieved a small wallet from the overhead compartment in the front of the tractor. Sgt. Fletcher observed an older paper driver's license in the front of the wallet. BAILEY then went to the driver

side door and provided his commercial license and provided the requested documents to Sgt. Fletcher for the inspection.

13. BAILEY provided a Bill of Lading (BOL) and answered questions about his route of travel and whether he maintains a consistent freight lane. BAILEY stated that he regularly works with the company listed on the BOL. Sgt. Fletcher explained that he would conduct a Level II walk-around inspection and requested BAILEY to send his Electronic Log Books. BAILEY attempted to send, but the application (MOTIV) he used to document his logs was not up to date with the Federal Motor Carrier Services requirements. The application (MOTIV) did not have the "Web Services" transfer function. Sgt. Fletcher explained what the violation was and how to correct it. BAILEY then wanted to contact MOTIV while the inspection was being conducted.

14. Sgt. Fletcher advised BAILEY of what he would need from him while performing the exterior portion of the Level II inspection. After completing an inspection of the lighting, horn, tires, cables, and hoses, Sgt. Fletcher requested BAILEY come to the rear of the trailer while the inspection continued. While getting out of the vehicle, Sgt. Fletcher asked BAILEY about his fire extinguisher and his safety triangles. BAILEY stated they were located in the "dog box" on the truck. After confirming the triangles and fire extinguisher were present and in working order, Sgt. Fletcher instructed BAILEY to come to the back of the trailer.

15. Sgt. Fletcher entered his patrol car to begin inspecting the paperwork and validating the documents provided. BAILEY entered the passenger seat of Sgt. Fletcher's patrol vehicle and sat in the seat. Sgt. Fletcher asked about BAILEY's time driving and whether the freight was a refrigerated load. BAILEY stated it was, and Sgt. Fletcher confirmed that freight containing medical supplies was usually a higher-paying commodity. While checking BAILEY's information through N.C.I.C., a return for an in-state warrant was returned for Georgia. Sgt. Fletcher explained

what the warrant was for and advised BAILEY to get that taken care of. Sgt. Fletcher continued working on the inspection and entered the information into his in-car system.

16. Sgt. Fletcher inspected BAILEY's logbook entries and confirmed his travels, using the BOL to verify the route. Sgt. Fletcher explained to BAILEY that, as part of the inspection process, it is necessary to ensure that there are no intoxicating substances located in the tractor or trailer. Sgt. Fletcher further explained that a driver cannot possess any open or unopened alcoholic beverage or vapes containing intoxicating substances. Sgt. Fletcher then asked BAILEY each question concerning which substances were prohibited in the commercial vehicle. Sgt. Fletcher asked about alcohol, vapes, marijuana, methamphetamine, cocaine, heroin, fentanyl, medications that were not his, or any other intoxicating substances inside the commercial vehicle.

17. Tennessee Highway Patrol Trooper Breeze and K-9 Nia arrived on scene and performed a free-air sniff around the commercial vehicle while the inspection was on-going. Sgt. Fletcher continued inspecting the paperwork and completing the inspection. Sgt. Fletcher located an insurance policy for another trailer, not the one currently being pulled. Trooper Breeze then notified Sgt. Fletcher that K-9 Nia gave a positive response, alerting near the driver's door and the "dog box" door. Sgt. Fletcher explained to BAILEY that a probable cause search of the tractor would be conducted. BAILEY was moved to the rear of Sgt. Fletcher's patrol vehicle and told he was detained during the tractor's search.

18. Sgt. Fletcher notified Trooper Breeze that he observed a large suitcase in the corner of the bunk. While entering the tractor cab, Sgt. Fletcher could smell a strong chemical smell in the cab. Sgt. Fletcher then asked Trooper Breeze, "When you step up in here, tell me what you smell." Trooper Breeze responded, "Chemical!" Sgt. Fletcher confirmed and described a glue or chemical smell. Sgt. Fletcher then turned to the top bunk area and moved the blankets BAILEY

had covered the bags with as Sgt. Fletcher moved the bag to unzip it. Sgt. Fletcher unzipped the bag, which revealed multiple rectangular packages, consistent with kilogram quantities of narcotics, specifically cocaine. Sgt. Fletcher's training and prior experience with these packages indicated they contained kilogram quantities of powder cocaine.

19. Sgt. Fletcher opened the second bag, revealing more packages consistent with those recovered earlier, kilogram quantities of cocaine. Sgt. Fletcher used his state-issued phone to photograph the narcotics in place. Given the amount of narcotics, Sgt. Fletcher and Trooper Breeze attempted to obtain assistance in moving the commercial vehicle off the roadway, but were unsuccessful. Sgt. Fletcher and Trooper Breeze arranged to have the commercial vehicle towed. Sgt. Fletcher then opened the suitcase he had originally observed in the corner of the bunk. The suitcase also contained the same packages as the other two bags, kilogram quantities of cocaine. Below are pictures from inside the cab from the scene:







20. Trooper Breeze remained with the narcotics and the commercial vehicle while completing the tow receipt as Sgt. Fletcher transported BAILEY to the Knox County Detention Center for booking. The semi-tractor, trailer, and cargo were towed to Jim's Wrecker Service in Knox County. The above facts occurred in Knox County, Tennessee. A count of the packages while entering them into the Tennessee Highway Patrol evidence locker confirmed 89 packages, believed to weigh approximately 2.2 pounds each.

**CONCLUSION**

21. Based on the foregoing, I respectfully submit there is probable cause to establish that BAILEY possessed with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

RYAN FLETCHER
Sergeant
Tennessee Highway Patrol

SWORN TO AND SUBSCRIBED before me this 28th day of May, 2026.

Honorable Jill E. McCook
United States Magistrate Judge